UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHAD HUBBARD, <br><br> Plaintiff, <br><br> v. <br><br> RIPPE, et al., <br><br> Defendants. | CAUSE NO. 3:25-CV-368-PPS-AZ |

OPINION AND ORDER

Chad Hubbard, a prisoner without a lawyer, filed a complaint. [ECF 1.] "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, I must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Hubbard alleges that Capt. Rippe, Lt. Romer, Lt. Bradford, Sgt. Buckles, Sgt. Laurie, Sgt. Ayres, and Sgt. Ruiz each knew he was in danger of being attacked by inmates and failed to protect him. The Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted). When an inmate is attacked by another inmate, the Eighth Amendment is violated only if "deliberate indifference by

prison officials effectively condones the attack by allowing it to happen." *Haley v. Gross*, 86 F.3d 630, 640 (7th Cir. 1996). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "Exercising poor judgment . . . falls short of meeting the standard of consciously disregarding a known risk to [a prisoner's] safety." *Lewis v. Richards*, 107 F.3d 549, 554 (7th Cir. 1997). "[A] complaint that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk." *Gevas v. McLaughlin*, 798 F.3d 475, 481 (7th Cir. 2015). General requests for help, expressions of fear, and even prior attacks are insufficient to alert guards to the need for action. *Klebanowski v. Sheahan*, 540 F.3d 633, 639–40 (7th Cir. 2008).

On February 26, 2024, Hubbard was involved in an altercation with another inmate. After the altercation, he talked with Capt. Rippe, Sgt. Laurie, and Sgt. Buckles. He told them that his life was in danger because the guy who attacked him is a gang member, and he is not a gang member. Hubbard claimed that he should not remain in any dorm on the GSC side of the prison because the inmate would send other inmates to attack him. He was provided with a protective custody form and told to write everything down. He completed the form and gave it to Sgt. Buckles. They denied the request and decided Hubbard would remain on the GSC side of the prison. He was

placed in a dorm directly below the dorm where he was attacked. He was later attacked by four inmates with weapons while he was asleep.[1]

Hubbard's request for protective custody speculated that he would be attacked by unspecified defendants at an unspecified time because of a single altercation with a gang member. It cannot be plausibly inferred from the complaint that he identified a specific, credible, and imminent risk of serious harm by a known assailant. Rather, Hubbard expressed general fear that he would be targeted following the attack based only on the assailant's affiliation with a gang. Maybe there's more to the story, but Hubbard hasn't provided any further details in his complaint.[2] Future events suggest that Hubbard may have been correct, but the only plausible inference that can be made from the facts alleged in the complaint is that Capt. Rippe, Sgt. Laurie, and Sgt. Buckles exercised poor judgment when they determined that placing Hubbard in a different dorm inside the GCS complex was appropriate. It cannot be plausibly inferred that they disregarded a known risk. Therefore, he may not proceed against Capt. Rippe, Sgt. Laurie, or Sgt. Buckles for their handling of this request for protective custody.

After receiving medical treatment, Hubbard was placed in D-2 East, which is an educational dorm. Hubbard does not report any problems in that dorm through April 9, 2024. On April 9, 2024, he was transferred to Johnson County for an upcoming sentencing hearing. He was sentenced on April 25, 2024, and transferred back to

---

[1] Hubbard does not indicate when this attack occurred.

[2] He does not indicate who the assailants were or explain any details about his prior communications with these individuals, if any. It is not clear from the complaint that there was any relationship between the prior incident and this one.

Westville Correctional Facility. He returned to D-2 East. There he learned that inmates from GSC had sent word over to "smash [him] on site," meaning they should punish Hubbard however possible. The inmates who told him this did not want to go on lockdown, so they told Hubbard that, if he did not come back to the dorm after breakfast, they would not harm him. He approached a sergeant about this problem. In response, he was placed in a holding cell and given another protective custody form. He again explained everything that had happened. In response to his request, he was moved again. This time, he was placed back on the GSC side of the prison in another dorm.[3] After only twenty minutes in the dorm, the sergeant removed him because it was clear he was in danger.

Hubbard filled out yet another request for protective custody and gave it to Sgt. Buckles. He again explained everything. He said he needed actual protective custody or at least to be moved to the I.C. side where inmates might not get word of the order to harm him. His request for protective custody was again denied. He begged Lt. Bradford, Sgt. Buckles, Sgt. Laurie for help. Around 6:00 p.m., Lt. Bradford had lost patience with Hubbard and told him he had no choice but to go where they told him to go. Hubbard refused to return to the GSC side. Lt. Bradford grabbed him and slammed him into the wall, placed him in cuffs, and dragged him to 3 dorm, which is where he was attacked two months prior.[4] The inmates began threatening him, and they told Lt.

---

[3] It is unclear who made the decision to place Hubbard in this dorm.

[4] Hubbard does not claim that this amounted to excessive force, but even if he had, I would not grant him leave to proceed on the claim. The "core requirement" for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to

4

Bradford that if Hubbard stayed, they would "fuck [him] up." [ECF 1-2 at 5.] Hubbard believed that, since Lt. Bradford heard the inmates threatening him, he would be convinced Hubbard was in danger and remove him. Lt. Bradford, however, decided that the problem of Hubbard's safety was one for the night shift to deal with.

Hubbard sat in the day room for three hours while the night shift correctional officer waited to hear from her supervisor, Lt. Romer. When she finally reached Lt. Romer, he told the correctional officer that he didn't care and to stop calling him. The correctional officer indicated that the only way she could help Hubbard was if a signal was called. Hubbard decided that he needed to create a situation where a signal would be called to protect himself, so he struck an inmate in front of the correctional officer.

Hubbard is suing Sgt. Buckles, Sgt. Laurie, Lt. Bradford and Lt. Romer for failing to place him in protective custody, but Hubbard was not attacked by another inmate after he made these requests for protection. Mere fear of an attack that does not occur does not state a claim for monetary damages. *See Doe v. Welborn*, 110 F.3d 520, 523–24 (7th Cir. 1997) ("An allegation that prison officials exposed a prisoner to a risk of violence at the hands of other inmates does not implicate the Eighth Amendment's Cruel and Unusual Punishments Clause.") (internal quotation marks and citation omitted). Therefore, I cannot permit Hubbard to proceed on a failure to protect claim

---

cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (citation omitted). Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an application of force, the amount of force used, and the extent of the injury suffered by the prisoner. *Id.* Here, force was used in response to his refusal to follow directions. Furthermore, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the constitution. *Graham v. Conner*, 490 U.S. 386, 396 (1989), *quoting Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973), *cert. denied* 414 U.S. 1033 (1973).

against Sgt. Buckles, Sgt. Laurie, Lt. Bradford or Lt. Romer based on their responses to his requests for protective custody.

When Hubbard struck another inmate, Sgt. Ayres and Sgt. Ruiz removed Hubbard from the unit. Hubbard alleges that they needed backup because the inmates attempted to stop them from removing him. He was taken to Lt. Romer's office, where he was verbally harassed. Lt. Romer had Sgt. Ayres and Sgt. Ruiz strip Hubbard down to his underwear and leave him in a cage overnight. It is unclear where Hubbard was placed after this, but he does not indicate that any further attacks have occurred. Therefore, he cannot proceed against Lt. Romer on a failure to protect claim.

Hubbard has named Sgt. Ayres and Sgt. Ruiz as defendants, but it is unclear why he is suing them. Placing Hubbard in cage overnight following a disciplinary incident wearing only his underwear certainly would have been unpleasant, but it does not rise to the level of a constitutional violation. The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted). Conditions that merely cause inconveniences and discomfort or make confinement unpleasant do not rise to the level of constitutional violations. *Adams v. Pate*, 445 F.2d 105, 108-09 (7th Cir. 1971). Therefore, I will not permit Hubbard to proceed against Sgt. Ayres and Sgt. Ruiz.

It is unclear where Hubbard is being housed now. He indicates that he is always looking over his shoulder for the individuals who want to hurt him. He seeks a

preliminary injunction in the form of an order that he be kept separate from everyone known to have attacked him.

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted) (emphasis in original). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Here, the complaint doesn't state a claim, and Hubbard therefore can't demonstrate that he's likely to succeed on the merits. Furthermore, more than a year has passed since the last attack described in the complaint, and it doesn't appear that Hubbard is currently housed with anyone who poses a danger to him. Therefore, the request for a preliminary injunction contained in his complaint will be denied.

If Hubbard believes he can state a claim based on (and consistent with) the events described in this complaint, he may file an amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. He needs to write the word "Amended" on the first page

7

above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

For these reasons, the court:

(1) GRANTS Chad Hubbard until **May 30, 2025**, to file an amended complaint; and

(2) CAUTIONS Chad Hubbard that, if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED on April 30, 2025.

/s/ Philip P. Simon
JUDGE
UNITED STATES DISTRICT COURT